UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN RODRIGUES,<br><br>             Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>             Defendant. | No. 1:22-cv-01077-JLT-GSA<br><br>**FINDINGS AND RECOMMENDATIONS TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART, TO REMAND FOR FURTHER PROCEEDINGS, AND TO DIRECT ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT COMMISSIONER OF SOCIAL SECURITY**<br><br>**(Doc. 15, 17)** |

### I.    Introduction

Plaintiff Karen Rodrigues seeks judicial review of a final decision of the Commissioner of Social Security denying her applications for social security disability benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act.[1]

### II.    Factual and Procedural Background

In both applications Plaintiff alleged disability onset date of January 23, 2020.  The Commissioner denied the applications initially on September 14, 2020, and on reconsideration on December 14, 2020.  Plaintiff appeared for a telephonic hearing before an Administrative Law Judge (the "ALJ") on May 24, 2021.  AR 31–65.  The ALJ issued an unfavorable decision dated July 23, 2021.  AR 12–30.  The Appeals Council denied review on June 27, 2022.  AR 1–6.

---

[1] The parties did <u>not</u> consent to the jurisdiction of a United States Magistrate Judge.  Doc. 10, 12.

### III.    The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.    "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 416.920(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the

claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff  bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

## IV.   The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 23, 2020.  AR 17.  At step two the ALJ found that Plaintiff had the following severe impairments: cerebrovascular accident; methamphetamine intoxication; chronic pain; headaches; and obesity.  AR 17.  The ALJ also found at step two that there was no objective or clinical evidence to establish a medically determinable impairment, severe or non-severe, of degenerative disc disease or left sided carpal tunnel syndrome.  AR 19.

At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 19–20.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 CFR 404.1567(b) with the following limitations:

> . . . lift or carry occasionally 20 pounds and frequently 10 pounds; stand or walk about six hours of an eight hour workday; and sit about six hours of an eight hour workday; occasionally climb, stoop, crouch, crawl, or kneel; with bilateral upper extremities occasional pushing or pulling and overhead reaching; and with left, minor, upper extremity frequent handling or fingering.

AR 21–24.

At step four the ALJ concluded that Plaintiff could perform her past relevant work as an office manager and custom order clerk.  AR 24–25.  Accordingly, the ALJ concluded that Plaintiff was not disabled since the alleged onset date of January 23, 2020.  AR 25.

**V.   Issue Presented**

Plaintiff asserts four claims of error: 1- remand is required because the ALJ ignored medical evidence of record in finding that Ms. Rodrigues' carpal tunnel syndrome and degenerative disc disease were not medically determinable impairments; 2- remand is required because the ALJ failed to consider mental impairments alleged by the claimant or proven in the medical evidence of record; 3- remand is required because the ALJ failed to either adopt mental limitations he found credible in his RFC or to explain why such credible limitations were being omitted; and 4- remand is required because the ALJ and appeals council judges had no legal authority to adjudicate this case because they were not properly appointed.  MSJ at 4–20, Doc. 15.

**A.   Legal Standard**

Before proceeding to steps four and five, the ALJ must first determine the claimant's residual functional capacity.  *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably

attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

### B.     Analysis

### 1.     Left Extremity Neuropathy and Degenerative Disc Disease

A medically determinable impairment (MDI) is one that results from "anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1521, 416.921.

The ALJ found there was no such evidence in the record to establish an MDI of carpal tunnel syndrome or degenerative disc disease.  AR 19.

To the contrary, as Plaintiff emphasizes, a July 30, 2020 nerve conduction study and electromyography test (NCS/EMG) showed "mild left <u>median</u> neuropathy localized at the wrist consistent with <u>carpal tunnel syndrome</u>" and "severe left <u>ulnar</u> neuropathy localized at the elbow consistent with <u>cubital tunnel syndrome</u>." AR 691 (emphasis added).  The ALJ explicitly found there was no evidence to support an MDI of carpal tunnel (median neuropathy due to compression at the wrist) but made no mention of cubital tunnel (ulnar neuropathy due to compression at the elbow).  Perhaps in response to the ALJ's imprecise language, Plaintiff somewhat conflates the two syndromes though they are distinct syndromes and described in the NCS/EMG report as such. Notwithstanding, the ALJ erred in failing to find MDIs of carpal tunnel syndrome <u>and cubital tunnel syndrome</u> of the left upper extremity.

The ALJ also found no evidence of an MDI of degenerative disc disease.  AR 19.  Again,

as Plaintiff emphasizes, that finding is undermined by Dr. Birdi's diagnoses and treatment of cervical degenerative disc disease (AR 688) and related MRI abnormalities including bulging discs and foraminal narrowing (AR 698–99).  The record also reflects chiropractic treatment for the same in September and October 2020 (AR 708, 712–13), physical therapy during the same time period (AR 879–904) which noted physical examination findings of reduced strength (AR 879), and reduced range of motion (AR 900).

Defendant's counterarguments generally revolve around the theme of harmless error.  The Ninth Circuit has explained that "the court will not reverse an ALJ's decision for harmless error, which exists when it is <u>clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination</u>." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (emphasis added).

To begin, Defendant argues that "Plaintiff fails to demonstrate how a determination that degenerative disc disease and carpal tunnel syndrome were medically determinable impairments would have changed the outcome of the ALJ's disability determination since Plaintiff's impairments did not support additional limitations than those set forth by the PAMFs of Drs. Wong and Bobba as well as the ALJ's consistent RFC determination."  Resp. at 13, Doc. 17.   What limitations those impairments supported (and their disabling effect) is certainly the ultimate question.  However, the Ninth Circuit's characterization of the harmless error doctrine as quoted above  does not offer a safe haven  for the Defendant  where the ALJ plainly overlooked three MDIs, one of which, ulnar neuropathy, was described as severe on EMG/NCS testing.

Further, it is not persuasive for Defendant to focus on Drs. Wong and Bobba's prior administrative findings (or "PAMFs").  Neither the PAMFs nor the ALJ's discussion of same necessarily cures an error committed at step two with respect to MDIs.  The ALJ's decision to give those PAMFs significant weight cannot be sustained if the ALJ made that decision based on an

incomplete view of Plaintiff's MDIs.  PAMFs in and of themselves carry little to no evidentiary value,  rather they constitute substantial evidence only when supported by independent clinical findings or other evidence.  *Saelee*, 94 F.3d at 522; *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.1995)); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Defendant also suggests that Plaintiff waived the issue by failing to challenge the PAMFs, or the ALJ's reliance on the same.  Defendant cites authority about waiver as a general matter but does not cite to authority suggesting a claimant must overly challenge the PAMFs on appeal or the ALJ's reliance on the same.

Defendant further contends that the error was harmless because step-two is nothing more than a de-minimis screening device used to dispose of groundless claims, and here the ALJ's decision proceeded past step two with respect to other MDIs.  Although that is true, once the claim proceeds past step two the ALJ must only consider impairments that are medically determinable, whether severe or non-severe.  *See* 20 C.F.R. § 404.1545 (explaining the agency considers "all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not "severe.").  The fact that the analysis continued past step two with respect to other MDIs does not cure the error in finding the left arm neuropathy and cervical impairments were not MDIs.  Such an erroneous finding would permit the ALJ to ignore those purported non-MDIs at the critical RFC stage.

Finally, Defendant emphasizes that despite incorrectly finding no MDIs at step two with respect to neuropathy or degenerative disc disease, the ALJ did in fact discuss the related medical evidence in the RFC analysis.  Indeed, the ALJ explained as follows:

> . . .  MRI of the cervical spine showed minimal central disc bulge at C5-6 with slight left foraminal narrowing (Exhibit 6F/15). EMG/NCS performed in July 2020 demonstrated abnormal left upper nerve conduction with normal right upper nerve conduction and normal bilateral upper needle EMG exam (Exhibit 6F/8).
> . . .
> She presented with pain in the thoracic and cervical spine for several months.

She was referred for chiropractic treatment with improvement in her symptoms (Exhibits 5F; 9F). By October 2020, she reports less pain following treatment (Exhibit 9F/1).

AR 22–23.

This discussion by the ALJ was fairly brief in that the ALJ described only "abnormal left upper nerve conduction" whereas a more complete description would be "*severe* left <u>ulnar neuropathy localized at the elbow consistent with <u>cubital tunnel syndrome</u>" and "*mild* left <u>median neuropathy localized at the wrist consistent with <u>carpal tunnel syndrome</u>" AR 691 (emphasis added). Thus, the ALJ's limited description discounts the significance of the severe ulnar neuropathy and fails to recognize the two distinct neuropathies at issue.

It is often said that an ALJ's summary of medical evidence is no substitute for an RFC analysis. That is particularly true where, as here, the summary of the evidence was contradicted by the ALJ's step two finding that Plaintiff had no MDIs with respect to left upper extremity neuropathy or degenerative disc disease. Although the RFC perhaps reflects some attempt to accommodate the impairments at issue in that it limits reaching, pushing, pulling, and manipulative activities, at a minimum the ALJ's conflicting discussion suggests those impairments were not fully or adequately addressed when formulating the RFC.

In sum, it is not clear that the error was inconsequential to the ultimate non-disability determination. Thus, the error cannot be considered harmless. *Tommasetti*, 533 F.3d at 1038.

### 2. <u>Aphasia and Anxiety</u>

Plaintiff contends the ALJ failed to consider, at any stage of the analysis, Plaintiff's mental impairments of aphasia and anxiety following a January 2020 methamphetamine related stroke. MSJ at 7–9. Plaintiff emphasizes the following evidence: 1- a January 2020 exam noted she was aphasic, unable to understand even "simple commands," had right and left confusion, had right hemianopsia, and had phonemic paraphasia (AR 739, 743); 2- upon discharge from rehabilitation

in February 2020, she had difficulty with expressing needs, independent memory function, and complex problem solving (AR 462); and 3- she "continued to suffer with aphasia, difficulty comprehending, and agitation related to aphasia through December 2020 (AR 628, 630, 634, 647, 687, 726, 729)." *Id.* at 8.

With respect to her anxiety, Plaintiff contends the ALJ only acknowledged that Plaintiff was alleging disability due to anxiety (AR 21) but did not subsequently discuss it. Specifically, Plaintiff emphasizes the following evidence: 1- a March 2020 anxiety diagnosis and prescription for Celexa (AR 638-40); 2- a May 2020 ER visit for an acute anxiety attack at which she was prescribed Hydroxyzine upon discharge (AR 570); 3- a July 2020 and October 2020 visit c/o anxiety (AR 623, 896); and 4- she was continued on Hydroxyzine in December 2020 (AR 835).

Defendant responds that the ALJ reasonably considered Plaintiff's mental impairments. First, Defendant notes that ALJ considered whether Plaintiff's methamphetamine use was a severe impairment and concluded it was not. Resp. at 17. In so concluding, Defendant notes that the ALJ performed the psychiatric review technique (PRT), considered the four broad areas of mental functioning (the "paragraph B criteria"), and explained why Plaintiff had no more than a mild limitation in each area. *Id.* However, Defendant's discussion is not responsive to Plaintiff's claims of error concerning aphasia and anxiety. The severity, or lack thereof, of Plaintiff's "methamphetamine use" is not the issue as there is no suggestion Plaintiff was using methamphetamines on an ongoing basis, or suffered ongoing mental impairments as a result of chronic substance abuse.[2] Rather, as the ALJ acknowledged, Plaintiff had a one-time cerebrovascular event (i.e. a stroke) in January of 2020 "related to" her methamphetamine use[3].

---

[2] If that were the case, the relevant inquiry would be as set forth in the regulations which specifically address substance abuse at 20 C.F.R. 416.935, which disallows an award of benefits where: a) the ALJ finds drug addiction or alcoholism; and, b) the substance abuse is a contributing factor material to the determination of disability. The ALJ did not make these findings or consider that regulation.

[3] Plaintiff testified she did not use methamphetamines thereafter, and the ALJ did not indicate there was any evidence suggesting otherwise. AR 21.

Her contention is that she suffered cognitive issues (aphasia) and anxiety following that event which were diagnosed and treated as set forth in the records cited above.  Importantly, the ALJ's discussion of the PRT and consideration of the four areas of mental functioning do not mention aphasia, the associated cognitive manifestations, anxiety, or cite any of the corresponding evidence as the ALJ's discussion was largely limited to Plaintiff's reported activities and what those activities purportedly demonstrated.  AR 18-19.

As far as the medical evidence, the only citation the ALJ provided at step two was to Exhibit 3F to support the proposition that "her memory and intellectual function were *fairly intact* upon examination," and "clinical findings show *no* difficulties in cognitive functioning, memory, and concentration."  AR 18-19 (emphasis added).  "Fairly intact" is a somewhat ambiguous description which does not necessarily have a benign connotation.  *"No* difficulties with cognitive function, memory, or concentration" is quite a strong assertion and requires commensurately strong support yet the ALJ cited Exhibit 3F in its entirety which is 47 pages of inpatient hospital rehabilitation records from January 2020 to February 2020 following her stroke.  The ALJ did not specify which pages or findings were relied upon.   Further, as discussed above, Plaintiff cited counterexamples of cognitive difficulties including an example from Exhibit 3F.  *See* AR 462 (noting difficulty with expressing needs, independent memory function and complex problem solving).

At step two the ALJ also referenced "other evidence detailed below."  In the subsequent RFC section the ALJ did provide a bit more detail:

> On January 22, 2020, claimant presented to the emergency room (ER) complaining of left-sided weakness and right facial droop. Despite denying drug and alcohol use, urine toxicology was positive for amphetamines. Diagnostic assessment included methamphetamine abuse and she was discharged home (Exhibit 2F/45, 52). The following day, she was admitted after presented with altered mental status that was likely meth intoxication, acute ischemic cerebrovascular accident with no neuro deficit and chronic pain syndrome. She was discharged to rehabilitation for acute physical therapy, occupational therapy and speech therapy. Discharge diagnoses included cerebrovascular accident, altered mental status, and acute cerebrovascular accident with some hemorrhagic transformation with right-sided weakness, chronic

pain syndrome, and amphetamine use (Exhibit 12F/2-5). *Subsequent progress notes document slow but steady improvement (Exhibits 3F; 5F; 9F).*

She was seen in the ER in May 2020 for right facial numbness and dysphagia. Diagnostic imaging is within normal limits. Her headache improved with Ativan and on recheck, she has no facial numbness, hand numbness or headache prompting her stable discharge (Exhibit 12F/61, 65). Due to musculoskeletal complaints as well as headaches, diagnostic workup was recommended in June 2020 (Exhibit 6F/4-5). MRI of the cervical spine showed minimal central disc bulge at C5-6 with slight left foraminal narrowing (Exhibit 6F/15). EMG/NCS performed in July 2020 demonstrated abnormal left upper nerve conduction with normal right upper nerve conduction and normal bilateral upper needle EMG exam (Exhibit 6F/8).

When seen August 19, 2020, she reports poor sleep but improvement in her headaches. While slightly unsteady gait is noted, the rest of the physical examination is within normal limits. *It is noted that she had no difficulty understanding or finding words (Exhibit 6F/1). The following month, she reports the CVA affected her memory and she has difficulty reading and coming up with words.* Additionally, she feels she has some right-sided weakness and continues to work with physical therapy. Of note, she states her migraines have been better and only gets it occasionally, maybe once a month (Exhibit 11F/9).

Immediately following the stroke, the claimant had significant right-sided symptoms (Exhibit 3F/8). By the end of her acute rehabilitation, she had shown modest improvement. She remained medically stable during her rehab stay; right hemiparesis continues to improve to near normal muscle strengths and coordination also improved (Exhibit 3F/9, 46-48). Office visit notes show the claimant's complaints of chronic pain that she attributed to the stroke. She presented with pain in the thoracic and cervical spine for several months. She was referred for chiropractic treatment with improvement in her symptoms (Exhibits 5F; 9F). By October 2020, she reports less pain following treatment (Exhibit 9F/1).

In December 2020, she presents to the ER complaining of constant headache for the past four days that was associated with nausea and blurred vision (Exhibit 12F/88). Other than slight right-sided deficit, objective findings were unremarkable (Exhibit 12F/92). Her headache was addressed with migraine cocktail resulting in complete resolution of her headache and she was subsequently discharged (Exhibit 12F/94). During a follow-up visit later that month, she states she continues to have migraine headaches almost every day, 25/30 days of the month. Elavil was stopped and she was started on Gabapentin (Exhibit 11F/3).

AR 22-23 (emphasis added).

Although this RFC discussion was much more detailed than the ALJ's step two discussion,

it primarily addressed physical manifestations of the stroke including left sided weakness, facial

droop, facial numbness, right sided weakness, dysphagia, hand numbness, migraines,

musculoskeletal pain, nausea, blurred vision, coordination and gait.

As it concerns aphasia, the ALJ's relevant findings were few.  First, the ALJ stated that the record demonstrated overall slow but steady improvement following her stroke, which is non-specific and was substantiated by generalized citations to exhibits 3F, 6F, and 9F in their entirety.

Next, the ALJ notes that "when seen August 19, 2020 . . . she had no difficulty understanding or finding words (Exhibit 6F/1)", though the following month she reported difficulty with memory and coming up with words.  AR 22.  However, this example of a benign notation related to aphasia in the 12 months following the stroke (AR 684),  is offset by Plaintiff's detailed numerous examples to the contrary, including: 1- a January 2020 exam noting that she was aphasic, unable to understand even "simple commands," had right and left confusion, had right hemianopsia, and had phonemic paraphasia (AR 739, 743); 2- upon discharge from rehabilitation in February 2020, she had difficulty with expressing needs, independent memory function, and complex problem solving (AR 462); and 3- she "continued to suffer with aphasia, difficulty comprehending, and agitation related to aphasia through December 2020" (AR 628, 630, 634, 647, 687, 726, 729). *Id.* at 8.  Defendant does not dispute the accuracy or completeness of Plaintiff's factual discussion, but offers one additional counterexample, namely the September 16, 2020 visit notes indicating no aphasia.  Resp. at 19 (citing AR 730).  Again, these two examples appear to be outweighed by those cited by Plaintiff making affirmance not appropriate.

Finally, Defendant emphasizes that "where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  However, that principle is best reserved for situations where the ALJ acknowledges the normal and abnormal medical findings alike and attempts to reconcile the two, rather than disregarding the latter.

With respect to anxiety, the ALJ mentioned the condition on exactly one occasion,

specifically that "Claimant sustained a methamphetamine related stroke on January 23, 2020 with residual symptoms, anemia, anxiety."  AR 21.  The ALJ did not cite or discuss the related evidence as Plaintiff detailed including: 1- a March 2020 anxiety diagnoses and prescription for Celexa (AR 638-40); 2- a May 2020 ER visit for an acute anxiety attack at which she prescribed Hydroxyzine upon discharge (AR 570); 3- July 2020 and October 2020 visits c/o anxiety (AR 623, 896); and 4- she was continued on Hydroxyzine in December 2020 (AR 835).  These records may not necessarily be extensive, or even strongly indicative of profound functional limitations, but the ALJ's discussion of anxiety was more or less non-existent.

Finally, Defendant again explains at length the purported significance of the prior administrative findings (PAMFs) of Drs. Franco and Milan at the initial and reconsideration levels of review.  AR 17-18.  Defendant emphasizes that Drs. Franco and Milan reviewed the pertinent evidence Plaintiff emphasizes and found no more than mild limitations in any area of functioning, and that the ALJ explained his reasoning for adopting their opinions.  Resp. at 17-18. In short, the argument is not persuasive.  The ALJ did little more than recite Drs. Franco and Milan's opinions and assert in a conclusory fashion that they are persuasive and consistent with the record.  AR 24. Importantly, this deference does not demonstrate that the ALJ examined and considered the pertinent evidence.  The Commissioner's consistent focus on PAMFs is not helpful to their argument.  Although the state agency consultants' PAMFs are relevant considerations under the regulations (20 C.F.R. § 404.1513a(b)(1)), they only constitute substantial evidence when supported by independent clinical findings or other evidence.  *Saelee*, 94 F.3d at 522; *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.1995)); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).  Claimants are statutorily entitled to a *de novo* review by an ALJ "based on evidence adduced at the hearing."  *See* 42 U.S.C. § 405(b); SSR 83-46c ("the Social Security Act provides each claimant with a right to a de novo hearing."); SSR 77-4 ("the claimant's right to a de novo hearing,

if he wishes one, is made clear by the reference in section 205(b) to the claimant's right to a decision based on evidence 'adduced at the hearing.'").  Simply giving deference to PAMFs could ultimately render the right to *de novo* review by an ALJ illusory.  As the Ninth Circuit has stated in other contexts, de novo review "considers the matter anew, as if no decision had been rendered." *Dawson v. Marshall,* 561 F.3d 930, 932 (9th Cir. 2009).

Therefore, Remand is appropriate for the ALJ to consider the above-cited evidence concerning Plaintiff's aphasia and anxiety and the functional limitations attributable to those impairments.

### 3.      <u>Incorporation of Mild Mental Limitations</u>

Plaintiff next contends in regard to mental limitations that the ALJ's opinion is internally inconsistent in that while the ALJ did find at least mild mental limitations in the four functional categories at step two, the ALJ failed to incorporate them into the RFC which makes no accommodation for mental limitations.  But this  argument fails as there is no controlling authority stating that mild limitations must be incorporated into an RFC.  The existence of two marked limitations, or one extreme limitation, satisfies listing 12.15 and is per se disabling, whereas an impairment causing no more than mild limitations in any area is generally considered a non-severe impairment. 20 C.F.R. § 416.920a(d)(1).

Plaintiff cites authority requiring the agency to "*consider*" the functional effects of both severe and non-severe impairments at the RFC stage, but that does not necessarily require the ALJ to *articulate* such consideration, nor does it mean the ALJ must *incorporate* mild limitations in the RFC.  MSJ at 10 (citing 20 C.F.R. §§ 404.1523(c), 404.1545(a)(2), 404.1529(d)(4), 416.923(c), 416.945(a)(2), 416.929(d)(4) (requiring adjudicators to consider the functional effects of all medically determinable impairments, not merely those which are severe, when formulating the RFC finding).  As for *moderate* limitations, by contrast, some courts have found they must be

incorporated in the RFC.  *See, e.g. Wascovich v. Saul*, 2:18-CV-659-EFB, 2019 WL 4572084, at

*4 (E.D. Cal. Sept. 20, 2019) ("Where the ALJ accepts the medical assessment of moderate

limitations, those limitations must be accounted for in the RFC."); (citing *Betts v. Colvin*, 531 F.

App'x 799, 800 (9th Cir. 2013).

Plaintiff reliance on isolated examples of district court opinions from other circuits holding

otherwise are not consistent with the regulations as discussed above.  MSJ at 14 (citing *Richardson*

*v. Saul*, 511 F.Supp.3d 791, 798-99 (E.D. Ky. 2021) (overturning a step 4 finding because the ALJ

did not explain why the RFC finding omitted mild mental functional limitations identified in the

PRT analysis).

However, it is another matter entirely whether Plaintiff's aphasia and anxiety, singly or in

combination, cause moderate or greater limitations in the four areas of mental functioning and

whether they should therefore be incorporated into the RFC.  The ALJ should consider this on

Remand after discussing the evidence of Plaintiff's aphasia and anxiety.

### 4.  Proper Appointment of ALJ and Appeals Council

Finally, Plaintiff contends that both the ALJ and the Appeals Council judges had no legal

authority to adjudicate this case.  Plaintiff explains that under the Federal Vacancies Reform Act

(FVRA) 5 U.S.C. § 3346(a), former acting Commissioner Berryhill's term (which began on January

20, 2017) should have expired 210 days later on November 16, 2017, and that Ms. Berryhill

unlawfully persisted as acting Commissioner through the date Andrew Saul became Commissioner

on June 17, 2019.  Therefore Plaintiff contends that former acting Commissioner Berryhill had no

authority to take the action she took on July 16, 2018 in ratifying the appointment of SSA's ALJs

and Appeals Council judges (*See* SSR 19-1p, 2019 WL 1324866) and thus neither the ALJ nor the

Appeals Council judges had authority to adjudicate the instant case.

Plaintiff provided little discussion of this issue.   Plaintiff's argument is predicated on two

out of circuit district court opinions: *Brian T. D. v. Kijakazi*, 2022 WL 179540 (D. Minn. Jan. 20, 2022) and *Richard J.M. v. Kijakazi*, 2022 WL 959914 (D. Minn. Mar. 30, 2022).  These opinions, although they discuss this issue quite thoroughly, are not controlling.  Further, as Defendant emphasizes, these cases are no longer good law following the decision in *Dahle v. Kijakazi*, 62 F.4th 424 (8th Cir. 2023), cert. denied sub nom. *Dahle v. O'Malley*, 144 S. Ct. 549, 217 L. Ed. 2d 293 (2024).

Notably, Plaintiff's brief was filed January 2, 2023, which was after the issuance of the two district court cases in *Brian* and *Richard*  in 2022, and before the Eight Circuit's decision in *Dahie* on March 7, 2023.  Thus, Plaintiff's reliance on the district court authority was not an oversight on Plaintiff's part.  Nevertheless, Plaintiff does not contend in her reply brief that those district court cases are still good law, nor contend that any other controlling or persuasive authority has similarly held, and her reply brief does not otherwise revisit the issue of the alleged improper appointment of the ALJs and Appeals Council judges by former acting Commissioner Berryhill.

## VI.    Findings

Remand is appropriate for the ALJ to conduct a new hearing and issue a new decision.  Specifically, the ALJ should reconsider all evidence concerning Plaintiff's: 1- severe left ulnar neuropathy (cubital tunnel syndrome); 2- mild left median neuropathy (carpal tunnel syndrome); 3- cervical degenerative disc disease; 4- aphasia and anxiety.

## VII.   Recommendations

For the reasons stated above, the recommendation is as follows:

1.     That Plaintiff's motion for summary judgment (Doc. 15) be **GRANTED in part.**

2.     That Defendant's cross-motion (Doc. 17) be **DENIED in part.**

3.     That the matter be remanded to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the

Findings and Recommendations.

4.      That the Court Clerk of Court be directed to enter judgment in favor of Plaintiff

Karen Rodriguez and against Defendant Commissioner of Social Security.

**VIII.   Objections Due Within 14 Days**

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **June 4, 2024**            **/s/ Gary S. Austin**
                                   UNITED STATES MAGISTRATE JUDGE